IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES ROBERT MATTHEWS,

             Plaintiff,                              Case No. 1:13-CV-01065-MC

             v.                                 OPINION AND ORDER

CAROLYN COLVIN,
ACTINGCOMMISSIONER OF SOCIAL
SECURITY

             Defendant.
_____

MCSHANE, Judge:

      This action is brought under 42 U.S.C. § 405(g) to obtain judicial review of the final

decision of the Commissioner of Social Security denying plaintiff's claim for disability insurance

benefits and supplemental security income. This Court affirms the Commissioner's decision.

1 – OPINION AND ORDER

## PROCEDURAL BACKGROUND

On July 19, 2010, plaintiff filed an application for disability insurance benefits and supplemental security income. The Commissioner initially denied these claims and plaintiff filed a request for reconsideration. On April 17, 2012, the Administrative Law Judge (ALJ) conducted a hearing. The ALJ later found the plaintiff not disabled. Plaintiff appeals to this court assigning error by the ALJ for the following reasons:

1) Whether the ALJ provided sufficient reasons for discounting the opinion of treating physician Dr. O'Sullivan;

2) Whether the ALJ provided sufficient reasons to discount plaintiff's subjective complaints;

3) Whether the ALJ properly determined the plaintiff's impairments, considered their limiting effects, and evaluated the medical evidence; and

4) Whether the ALJ's hypothetical to the Vocational Expert (VE) accurately reflected the plaintiff's condition.

## STANDARD OF REVIEW

The district court shall affirm the Commissioner's decision if based upon proper legal standards and the legal findings are supported by substantial evidence on the record. *Batson v. Comm'r for Soc. Sec. Admin*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence is more than a mere scintilla, i.e., a tiny trace or spark of a specified quality or feeling, but less than a preponderance. *Consolidated Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 217 (1938); *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The reviewing court shall weigh both evidence that supports and detracts from the

2 – OPINION AND ORDER

Commissioner's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1989). The reviewing court shall not simply substitute its judgment for that of the commissioner. *Batson*, 359 F.3d at 1196. Thus, even if evidence is susceptible to multiple rational interpretations, the Commissioner's conclusion must be upheld. *Id*. at 1193.

## DISCUSSION

**I.    The ALJ provided sufficient reasons to discount the opinion of Dr. O'Sullivan**

The weight accorded to a medical opinion is based upon an interplay of various factors. 20 C.F.R §§ 404.1527 and 416.927. In general, the opinion of a treating physician is entitled to more weight than an examining physician, and an examining physician is entitled to more weight than a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). When one medical opinion contradicts another medical opinion, "the ALJ is charged with determining credibility and resolving the conflict." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). The ALJ may reject a contradicted treating or examining physician's opinion only by providing "specific and legitimate reasons" supported by substantial evidence within the record. *Lester*, 81 F.3d at 830. While the opinion of a non-examining physician is not substantial evidence by itself, it may be when supplemented with more, i.e. independent evidence. *Id*. at 831; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). "'The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Morgan v. Commissioner of the Soc. Sec. Assoc.*, 169 F.3d 595, 600-01 (9th Cir. 1999) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

The ALJ provided three reasons to reject Dr. O'Sullivan's opinion: 1) Dr. O' Sullivan's ultimate opinion that plaintiff is disabled is one that is reserved for the Commissioner; 2) Dr.

3 – OPINION AND ORDER

O'Sullivan prescribed only conservative treatment; and 3) Dr. O'Sullivan's opinion is not supported by the evidence. These reasons often intertwine with each other and the other issues for review.

### a) Dr. O' Sullivan's Ultimate Opinion

An opinion that a person is disabled is reserved for the Commissioner. 20 C.F.R §§ 404.1527(d)(1) and 416.927(d)(1). When considering such opinions on the ultimate issue of whether a claimant is disabled, the Ninth Circuit distinguishes between opinions evaluating "functional exertional capacity" and conclusions regarding whether a claimant can work or is disabled. *See McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011).

> A treating physician's evaluation of a patient's ability to work may be useful or suggestive of useful information, but a treating physician ordinarily does not consult a vocational expert or have the expertise of one. An impairment is a purely medical condition. A disability is an administrative determination of how an impairment, in relation to education, age, technological, economic, and social factors, affects the ability to engage in gainful activity.

*Id.* at 885.

Some opinions as to a claimant's capacity to work, however, are properly considered medical opinions as far as they are not conclusory and are based upon objective medical evidence. *Hill v. Astrue*, 698 F.3d 1153, 1160 (9th Cir. 2012). In Dr. O'Sullivan's first examination, the doctor stated, "I think because of his pain he is a candidate for social security disability." TR 475. In his second examination, a little over a year later, Dr. O'Sullivan stated, "I do feel with the level of pain, dysfunction and impairment, he is a candidate for SSDI. I cannot see him returning to gainful employment." TR 616. In a follow up assessment, Dr. O Sullivan restated his opinions from the second examination in stronger language. TR 617.

4 – OPINION AND ORDER

The ALJ did not err in rejecting Dr. O'Sullivan's ultimate opinions regarding plaintiff's disability as the opinions are conclusory, make an administrative decision reserved for the Commissioner, and do not appear to be based upon objective evidence. The statements, while failing to assert outright that the plaintiff is disabled, indicate strong support for such a determination. Both statements make a determination requiring interplay of the various factors that the Commissioner looks towards during administrative hearings. Finally, Dr. O'Sullivan appeared to base both statements largely upon plaintiff's subjective claims of pain. As discussed below, the ALJ concluded plaintiff's self-reports of pain were not credible.

While the second statement mentions the plaintiff's dysfunction and impairment, the statement does not reference any objective evidence apart from the conclusive statement the impairments make the plaintiff a candidate for SSDI. Such "meager" statements do not often satisfy courts when making these types of determinations. *See Tonapetyan*, 242 F.3d at 1149; *See also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999). Thus, the ALJ was justified in disregarding Dr. O'Sullivan's opinion on this matter and using the reasoning behind this determination as a reason to discredit Dr. O'Sullivan's medical findings and opinions.

**b) Dr. O' Sullivan's proscribed treatment**

Normally, the type of proscribed treatment goes towards the credibility of the claimant *See e.g. Carmickle v. Comm'r, Soc. Sec. Assoc.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Conservative courses of treatments can undermine allegations of pain in circumstances where the plaintiff lacks good reasons for failing to pursue further forms of treatment. *Id*. While the ALJ originally used such argument in the traditional framework (TR 18-19), the claim is equally applicable in the credibility of a treating physician. Dr. O'Sullivan sought to have plaintiff

evaluated by a "pain management specialist." TR 475. While the claimant requested medication, there is no indication Dr. O'Sullivan, at first, prescribed such medication. *Id*. Dr. O'Sullivan opined that pain management was preferable to surgery. *Id*. Upon his second time examining the plaintiff, Dr. O'Sullivan reaffirmed this belief. TR 616. As opposed to options such as surgery, pain management is a rather conservative treatment. Finally, Dr. O'Sullivan would seem to agree with this assessment as, during the follow-up, Dr. O'Sullivan noted the "conservative efforts including injections." TR 617.

While perhaps the plaintiff had reason to reject further pain injections, Dr. O'Sullivan surely was aware of those reasons by the second examination. His notes indicate the plaintiff described worsening pain in the back and shoulder. TR 616. This corresponds with plaintiff's testimony that injections made the pain worse in the shoulder and back. TR 39, 49, 51. Dr. O'Sullivan does not have a duty to force the plaintiff to continue treatment or proscribe treatment that is more aggressive. However, knowledge of the plaintiff's reasons for resisting treatment and the lack of results from conservative treatment reasonably should have informed Dr. O'Sullivan that other treatment was necessary or should have raised concerns with the credibility of the plaintiff's pain. After noting this reasonable inference regarding the knowledge of Dr. O'Sullivan and the consistent proscriptions of only conservative efforts, it is clear that the lack of prescribing more aggressive treatment supports the ALJ's decision to give less weight to Dr. O'Sullivan's opinion.

c)  **Dr. O' Sullivan's Evidence Supporting His Opinions**

The ALJ specifically noted Dr. O'Sullivan's opinion held little weight because the records did not support the opinion. TR 20. The ALJ noted a lack of objective evidence, such as

X-rays, imaging studies, laboratory data or other tests, that would support such severe limitations or indicate a disabling condition. *Id*. Further, the ALJ noted Dr. O'Sullivan did not explain how the objective findings that do exist relate to or prove the claims. *Id*.

In Dr. O'Sullivan's report from his first examination of plaintiff, he wrote that the plaintiff's lower extremities had good range of motion with motor and sensation functions intact and full range of motion of upper and mid spine. TR 475. The lower spine only demonstrated a loss of lumbar lordosis, muscle spasm, tenderness and restricted motion. *Id*. Despite this, Dr. O'Sullivan opined that plaintiff was a candidate for SSI. *Id*. Dr. O'Sullivan noted only an MRI that confirmed minimal scoliosis and degenerative disc disease (DDD) at L4-5 and L5-S1. *Id*. The MRI that Dr. O'Sullivan referred to showed mild to moderate DDD causing a mild to moderate stenosis. TR 505. In the second exam, Dr. O'Sullivan noted diminished motor and sensation functions in the extremities. TR 616. Further, Dr. O'Sullivan noted new pain in the plaintiff's shoulder area and continued pain in the lower back. Apart from the plaintiff's statements and basic functionality tests, Dr. O'Sullivan again stated the plaintiff "clearly had disabling pain" and was a candidate for SSDI. *Id*. However, no further objective testing was ordered or viewed. *Id*. Finally, in the follow-up exam, Dr. O'Sullivan noted only progressive pain and numbness in the legs with little change in the functional examination findings occurring in the back. TR 617. Despite this, Dr. O'Sullivan re-affirmed his findings that plaintiff "clearly was a candidate for social security disability." *Id*. Dr. O'Sullivan ordered another MRI for the lower back and one for the shoulder. *Id*. However, there is no evidence to suggest Dr. O'Sullivan ever viewed these at a later point.

The MRI viewed by Dr. O'Sullivan described the condition of the plaintiff's DDD as mild to moderate. Mild is defined as "moderate in action or effect; not severe." *Mild*, MERRIAM-

7 – OPINION AND ORDER

WEBSTER, last viewed June 10, 2014, http://www.merriam-webster.com/medical/mild. Moderate is defined as avoiding extremes of behavior: observing reasonable limits; not severe in effect or degree." *Moderate*, MERRIAM-WEBSTER, last viewed June 10, 2014, http://www.merriam-webster.com/medical/moderate.

In *Burch v. Barnhart*, the court affirmed an ALJ's finding that a claimant's complaints of severe low back pain were inconsistent with an MRI showing only mild DDD at L5-S1 and a mild dextroliosis with "no apparent herniation or nerve root impairment." 400 F.3d 676, 681 (9th Cir. 2005). The court held that the ALJ could use the medical evidence as a factor in determining the credibility of a claimant. *Id*. The court also held that the ALJ could consider lack of treatment in determining the credibility of a claimant. *Id*. Thus, because the ALJ provided clear and convincing reasons to reject the claimant's testimony, the court upheld this decision of the ALJ. Here, while the ALJ is applying these factors to the credibility of the treating physician, they are equally potent. The ALJ had three separate reasons to give little weight to Dr. O'Sullivan's opinion. Like in *Burch*, the ALJ here noted a conservative treatment plan and found the objective medical evidence did not support Dr. O'Sullivan's conclusions. These facts are similar to those in *Burch*. Both are cases in which an MRI showed little more than mild DDD. Further, Dr. O'Sullivan proscribed only conservative treatment to deal with what was supposedly severe and disabling back pain. Finally, Dr. O'Sullivan's statements were conclusory and not backed with reasoning pointing to much of anything save the plaintiff's subjective statements. The ALJ did not err in concluding that Dr. O'Sullivan's opinion is entitled to little weight because the objective medical evidence in the record does not support Dr. O'Sullivan's opinion.

**II.    The ALJ provided sufficient reasons to reject the complaints of the Plaintiff**

The *Cotton* test places a burden on the claimant to show: 1) objective medical evidence of impairment and; 2) that the impairment, or combination of impairments, could reasonably produce some degree of reported symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). Once a claimant meets the *Cotton* test, and there is not affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of his symptoms by identifying specific testimony by the claimant and providing clear and convincing reasons for finding the testimony not credible. *Id*. at 1284; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). In evaluating a claimant's credibility, the ALJ may use "ordinary techniques of credibility evaluation." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

The ALJ noted that the plaintiff's impairments could produce some degree of reported symptoms. TR 18. However, the ALJ did not find the plaintiff's reports of pain and limitations credible to the extent they were inconsistent with the RFC. *Id*. Specifically, the ALJ noted plaintiff's claims of severe levels of pain, that plaintiff could only walk and sit around 10 minutes at a time, and that plaintiff required assistance from a walking stick. TR 19. The ALJ referenced: 1) the objective medical evidence; 2) the conservative medical treatment plaintiff received and; 3) plaintiff's statements regarding work and his walking device. TR 18-19.

First, the ALJ noted that the alleged limitations could not be objectively verified with "any reasonable degree of certainty." TR 19. Second, in terms of the medical evidence, the ALJ stated that, to the extent the limitations are genuine, with such weak medical evidence it is difficult to attribute the limitations to the plaintiff's medical impairments. *Id*. Supporting this contention, the ALJ pointed to the MRI showing mild/moderate DDD. TR 505. The ALJ pointed

to notes during exams showing the plaintiff was ambulating normally and under his own power as of February 2011. TR 493. The ALJ also pointed to X-ray evidence whose accompanying treatment notes were consistent with DDD in L4-5 and L5-S1 with only back and bi-lateral pain. TR 511. Concerning the X-ray, the ALJ specifically noted the absence of nerve root impingement or radiculopathy. TR 18.

The ALJ also took issue with the type and duration of treatment provided to the plaintiff. TR 18. In fact, the ALJ noted that since the on set date, little treatment had occurred, the plaintiff did not go seek treatment regularly, and that the treating doctors routinely described the treatment as conservative. *Id*. In fact, the ALJ noted that the plaintiff, when he did seek treatment, did not follow other proscribed forms of treatment, for example, seeing a pain management specialist. TR 19. Finally, the ALJ took issue with conflicting statements regarding the plaintiff's termination of employment, creation and use of his walking stick and reports regarding his bathing. *Id*. Thus, because the ALJ extensively noted objective medical evidence, inconsistent statements by the plaintiff and the lack of treatment one would expect for treating such severe impairments, the ALJ produced clear and convincing reasons to reject the claimant's subjective testimony.

**III.    The ALJ properly determined the plaintiff's impairments, considered their limiting effects, and evaluated the medical evidence**

Plaintiff argues that the ALJ did not consider whether his obesity and other impairments, when in combination with each other, were severe enough to be equivalent to a listing and that the ALJ did not consider these impairments correctly throughout the process. When making a determination of disability, the ALJ is required to develop the record and interpret the medical evidence. *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). This does not

10 – OPINION AND ORDER

require that the ALJ discuss every piece of evidence. *Id*. (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). While the ALJ does have a duty to adequately explain his finding at step three, *see Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990), ALJs are presumed to know and apply the law in their decisions and there is not a magical incantation that is required for findings. *See Lockwood v. Comm'r Soc. Sec. Assoc.*, 616 F.3d 1068, 1072 note. 3 (9th Cir. 2010); *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).Obesity, like other impairments, is severe when it alone, or in combination with other impairments, significantly limits an individual's ability to do basic work activities. SSR 02-01p. An ALJ will not make assumptions about obesity's affect on the claimant, but instead must determine this based upon each individual's record. *Burch*, 400 F.3d 676, 682 (9th Cir. 2005).

In evaluating the severity of the plaintiff's obesity, the ALJ noted the relevant law and, based upon the plaintiff's reported weight and height at the time of hearing, noted plaintiff's BMI. TR 16. Though conclusory, the ALJ stated that he applied the law to the evidence within the record. *Id*. The record as to this issue is almost non-existent as those treating the plaintiff noted his obesity only in passing and within only a few treatment notes. TR 453, 456, 462. Further, the ALJ was aware of plaintiff's work history, plaintiff's obesity while working, and the strenuous work involved prior to the back injury. *See* TR 35, 52. From the limited pieces of record, review of medical opinions (later within his opinion) that incorporated such knowledge, and knowledge of the plaintiff's own history, the ALJ's determination, while somewhat conclusory, was adequate regarding his finding that plaintiff's obesity was not severe.

The ALJ also provided an adequate finding regarding equivalency of the plaintiff's impairments, or combination thereof, to those from the listing. In his finding, the ALJ noted the various listings he considered and explained why he did not find the plaintiff's impairments an

11 – OPINION AND ORDER

equivalent. TR 16. The ALJ specifically noted that his severe impairment of the shoulder and knee together did not equal the impairment under the listing for degenerative joint disease. *Id*. Thus, since the ALJ is presumed to know and apply the law and the ALJ showed that he considered at least one combination of impairments, the ALJ adequately explained his findings.

**IV.    The ALJ's hypothetical to the VE accurately reflected the plaintiff's condition**

An ALJ may limit his hypothetical to the limitations he finds credible and substantially supported within the record. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (upholding a ALJ's hypothetical as proper that contained only limitations he found credible and substantially supported in the record). Further, an ALJ is not bound to accept as true the limitations posed by counsel when examining the VE. *Magallanes v. Bowen*, 881 F.2d 747, 756 (9th Cir. 1989). In *Magallanes*, the VE testified as to what jobs the claimant could do with limitations as poised by the ALJ. *Id*. However, the claimant's attorney then poised other restrictions that the plaintiff could not stand or sit more than one half hour at a time and elicited testimony from the VE regarding these limitations. *Id*. The VE testified that the claimant, under these restrictions could not work any job. *Id*. Despite this, because the ALJ was free to disregard the attorney's hypothetical limitations so long as the record substantially supported the ALJ's hypothetical, the court upheld the ALJ's reliance on the VE's testimony. *Id*. at 757.

Here, the ALJ hypothetical contained the plaintiff's age, education and work history along with limitations later adopted by the ALJ in the RFC. TR 53. The plaintiff's attorney provided his own assessment of the plaintiff in his hypothetical, which was similar to the one in *Magallanes*. TR 54. As discussed above, the ALJ did not find the limitations as described by the plaintiff's attorney credible because they derived from Dr. O'Sullivan's opinions, which the ALJ

accorded little weight to, and plaintiff's subjective claims, which the ALJ found unreliable. Instead, the ALJ adopted an RFC based upon medical opinions of the DDS physicians and other items such as MRIs and X-rays from the record. *See* TR 16, 53. Because substantial evidence in the record supports the ALJ's limitations, the hypothetical provided to the VE was free of error.

## CONCLUSION

For the reasons above, this Court affirms the ALJ's findings.

IT IS SO ORDERED.

DATED this _30_ day of June, 2014.


_s/ Michael J. McShane _____
Michael McShane
United States District Judge